# 26-1317 & 26-1318

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

AVALON HOLDINGS CORPORATION AND NEW CONCEPT ENERGY, INC.,

*Plaintiffs-Appellees,*

-against-

GUY GENTILE,

*Defendant-Appellant,*

MINTBROKER INTERNATIONAL, LTD.,

*Defendant.*

*On appeal from Order and Judgment of the U.S. District Court for the Southern District of New York Nos. 18-cv-7291 (DLC) (RWL), 18-cv-8896 (DLC) (RWL)*

## BRIEF FOR DEFENDANT-APPELLANT GUY GENTILE

GUY GENTILE
P.O. Box 504377
Dubai, United Arab Emirates
+971 58 590 2347
mrguygentile@gmail.com
*Pro Se Defendant-Appellant*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... **iv**

**JURISDICTIONAL STATEMENT** .......... **1**

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** .......... **2**

**SUMMARY OF ARGUMENT** .......... **4**

**STANDARD OF REVIEW** .......... **5**

**STATEMENT OF THE CASE** .......... **6**

A. The Judgment .......... 6

B. The First Warrant and the Service That Never Occurred .......... 7

C. The 2025 Deposition Sequence .......... 7

D. Reinstatement .......... 8

**ARGUMENT** .......... **8**

**I. THE DISTRICT COURT ABUSED ITS DISCRETION BY BACKDATING A FIRST-TIME RULE 54(b) DETERMINATION** .......... **8**

A. The issue is the propriety of retroactivity, not whether later certification is categorically permitted .......... 8

B. The record supports the conclusion that the April order made, rather than memorialized, the Rule 54(b) determination .......... 9

C. The District Court did not explain why retroactive, rather than prospective, certification was necessary .......... 11

D. Leonhard and Kaufman do not compel retroactivity here .......... 12

E. The prejudice analysis did not address Gentile's separate, concrete prejudice .......... 13

F. The joint-judgment structure required a fuller Rule 54(b) analysis .......... 14

**II. THE DISTRICT COURT ERRED IN CONSTRUING THE SEPTEMBER 23, 2025 AND THE SEPTEMBER 26, 2025 ORDERS AS AUTHORIZING AUTOMATIC REINSTATEMENT OF THE ARREST WARRANT** .......... **14**

A. The District Court did not adequately address whether the operative orders were sufficiently clear to justify arrest .......... 16

**III. THE DISTRICT COURT ABUSED ITS DISCRETION IN REINSTATING A CIVIL ARREST WARRANT AND ORDERING INCARCERATION WITHOUT ADEQUATELY CONSIDERING LESSER COERCIVE ALTERNATIVES** .......... **20**

**IV. THE ORDER SHOULD BE VACATED BECAUSE IT CONVERTS A DISPUTED DISCOVERY HISTORY INTO COERCIVE INCARCERATION WITHOUT A SUFFICIENTLY INDIVIDUALIZED EXPLANATION** .......... **21**

**V. THE COURT FAILED TO GRAPPLE WITH LESSER-COERCIVE ALTERNATIVES AND THE PRACTICAL REALITIES FACING A PRO SE LITIGANT ABROAD.......... 22**

**VI. THE COURT TREATED APPELLANT'S EXPLANATIONS AS FRIVOLOUS WITHOUT ENGAGING THEM IN A REASONED WAY.......... 23**

**VII. THE CONTEMPT ADJUDICATION RESTS ON DISPUTED FACTS RESOLVED WITHOUT A HEARING AND WITHOUT THE REQUIRED FINDINGS.......... 24**

A. The District Court engaged in characterizing Gentile's pro se submission.......... 24

B. Reinstatement was discretionary, and no fresh determination was made on the 2026 record.......... 26

**VIII. INDEFINITE INCARCERATION WAS NOT A PERMISSIBLE COERCIVE REMEDY ON THIS RECORD.......... 26**

**IX. THE PURGE CONDITION IS CIRCULAR, AND THE ALTERNATIVES WERE REJECTED WITHOUT WEIGHING EFFECTIVENESS.......... 27**

**X. THE DISTRICT COURT'S ONLY ASSESSMENT OF A LESSER SANCTION PREDATES THE RECORD ON WHICH INCARCERATION WAS ORDERED.......... 29**

**XI. A PARALLEL NYS PROCEEDING, COMMENCED BY APPELLEES, IN WHICH THEY CAN EXAMINE GENTILE BY ZOOM, REFUTES THEIR CLAIM OF NECESSITY OF AN IN-PERSON SDNY DEPOSITION.......... 31**

**XII. THE PURGE CONDITION IS UNSPECIFIED, AND THE NATIONWIDE-ARREST DIRECTIVE RESTS ON THE WRONG RULE AND IS OVER COERCIVE... 33**

A. Lack of Specificity as to Purge conditions.......... 33

B. Lack of specificity as to what subpoenas were outstanding.......... 34

C. The Order's force, entry, and indefinite-detention terms are broader than any coercive purpose requires.......... 35

D. District Court Infringed on Gentile's Right to Conduct His own Defense.......... 36

E. The Warrant Was Used as Leverage Rather Than as a Necessary Last Resort.......... 36

**XIII. THE DISTRICT COURT ABUSED ITS DISCRETION BY REINSTATING THE ARREST WARRANT WITHOUT CONSIDERING THE DEFECTIVE NOTICE PREDICATE OF THE ORIGINAL WARRANT.......... 42**

**XIV. THE ARREST WARRANT WAS IMPERMISSIBLY USED AS LEVERAGE TO PRESSURE GENTILE'S FAMILY.......... 46**

**XV. THE R&R, THE BASIS FOR THE WARRANT, IMPROPERLY TREATED LITIGATION DELAY AND NONPAYMENT AS GROUNDS FOR ARREST.......... 49**

**XVI. THE WARRANT IMPROPERLY EXPANDED AVALON'S MOTION INTO A CASE-WIDE CONTEMPT REMEDY.......... 54**

**XVII. THIS COURT SHOULD PERMIT A LIMITED RECORD NOTICE REGARDING RELATED PROCEEDINGS WITHOUT CONSIDERING THE WESTCHESTER FILES AS EVIDENCE....56**

**XVIII. ANY FUGITIVE-DISENTITLEMENT OBJECTION SHOULD BE REJECTED. ....61**

**CONCLUSION....62**

**CERTIFICATE OF COMPLIANCE....64**

**CERTIFICATE OF SERVICE....65**

**ADDENDUM: PERTINENT STATUTES AND RULES....66**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)........................................5, 23, 25

*Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204 (1821)............................................................27

*Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006).........................................................41

*CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91 (2d Cir. 2016).......................17, 26, 46

*Cullen v. Margiotta*, 618 F.2d 226 (2d Cir. 1980)..........................................................9, 12

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)............................................................................48

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980).............................................12

*Deakins v. Monaghan*, 484 U.S. 193 (1988).......................................................................11

*Degen v. United States*, 517 U.S. 820 (1996)..........................................................5, 61, 62

*Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987)19, 20, 29, 30, 31

*Drywall Tapers & Pointers of Greater N.Y. v. Local 530*, 889 F.2d 389 (2d Cir. 1989)..........................................................................................50

*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278 (2d Cir. 1997)................61

*Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085 (2d Cir. 1992)................................6, 9

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911)...........................................40

*Hall v. Hall*, 584 U.S. 59 (2018)..........................................................................................56

*Hess v. N.J. Transit Rail Operations, Inc.*, 846 F.2d 114 (3d Cir. 1988)..........................34

*Hicks v. Feiock*, 485 U.S. 624 (1988)...........................................................................27, 40

*Hogan v. Consol. Rail Corp.*, 961 F.2d 1021 (2d Cir. 1992)...............................................1

*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994)......................................................41

*In re Larisa Ivanovna Markus*, 78 F.4th 554 (2d Cir. 2023).............................................44

*Int'l Union, UMWA v. Bagwell*, 512 U.S. 821 (1994).............20, 26, 27, 28, 39, 44, et seq.

*John Z. v. New York City Dep't of Educ.*, 175 F.3d 134 (2d Cir. 1999)............................16

*Kaufman & Ruderman, Inc. v. Cohn & Rosenberger*, 177 F.2d 849 (2d Cir. 1949).........12

*King v. Allied Vision, Ltd.*, 65 F.3d 1051 (2d Cir. 1995).......................4, 17, 34, 35, 50, 54

*Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980)..................................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).................................44

*Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993).................................................61

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004)................................................17, 45, 55, 59

*Perez v. Danbury Hosp.*, 347 F.3d 419 (2d Cir. 2003).....................................................24

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53 (2d Cir. 1982)4, 28, 29, 30, 32, 36, et seq.

*Powell v. Ward*, 643 F.2d 924 (2d Cir. 1981)....................17

*Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57 (2020)....................5, 10

*Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571 (S.D.N.Y. 2020)....................41

*SEC v. Musella*, 818 F. Supp. 1041 (S.D.N.Y. 1993)....................42

*Shillitani v. United States*, 384 U.S. 364 (1966)....................4, 20, 27, 31, 34, 39, et seq.

*Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958)....................7, 18, 43, 46

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008)....................57

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006)....................6, 24

*Turner v. Rogers*, 564 U.S. 431 (2011)....................22, 33, 51, 63

*United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091 (2d Cir. 1995)....................16, 24, 35

*United States v. Rylander*, 460 U.S. 752 (1983)....................20

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)....................25

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)....................20, 27, 51

## Statutes, Rules, and Other Authorities

15 U.S.C. § 78aa....................1

15 U.S.C. § 78p(b)....................57

18 U.S.C. § 401....................66

28 U.S.C. § 1291....................1, 66

28 U.S.C. §§ 1331, 1337....................1

28 U.S.C. § 1654....................36

Fed. R. App. P. 4(a)(1)(A)....................1, 67

Fed. R. App. P. 10(a)....................57

Fed. R. App. P. 28(f)....................66

Fed. R. App. P. 30(a)....................57

Fed. R. App. P. 32(a)(5)....................64

Fed. R. App. P. 32(a)(6)....................64

Fed. R. App. P. 32(a)(7)....................64

Fed. R. App. P. 32(f)....................64

Fed. R. Civ. P. 4(b) .... 34
Fed. R. Civ. P. 4.1(b) .... 5, 34, 35, 67
Fed. R. Civ. P. 16(c) .... 41
Fed. R. Civ. P. 30(b)(4) .... 4, 28, 29, 67
Fed. R. Civ. P. 44.1 .... 19
Fed. R. Civ. P. 45(g) .... 54
Fed. R. Civ. P. 54(b) .... 1, 2, 5, 6, 8, 9, et seq.
Fed. R. Civ. P. 69(a) .... 49, 50, 56, 68
Fed. R. Evid. 201 .... 57
2d Cir. Local Rule 32.1(a) .... 64

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa. This Court has jurisdiction under 28 U.S.C. § 1291.

On April 10, 2026 the district court entered an Opinion and Order reinstating a warrant of civil arrest, adopting the January 8, 2026 Reports and Recommendations, and certifying the March 20, 2024 judgment under Fed. R. Civ. P. 54(b) *nunc pro tunc*. A.249–A.262. The companion Order directs Appellant's arrest in any district and his detention until he complies with outstanding subpoenas and appears for deposition in the Southern District of New York. A.263–A.265. Judgment was entered April 13, 2026. A.266.

The April 10, 2026 orders are appealable. A contempt order directing confinement is final under § 1291 when, as here, it issues after judgment and conclusively determines the contempt and sanction. *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1024–25 (2d Cir. 1992). The Rule 54(b) certification in the same Opinion is also reviewable.

Appellant filed his notice of appeal on May 6, 2026, and a signed notice on May 9, 2026, within 30 days of entry. Fed. R. App. P. 4(a)(1)(A); A.269; A.270.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether backdating a first-time Rule 54(b) determination to March 2024 abused discretion.

2. Whether the September 2025 orders authorized automatic reinstatement of the arrest warrant.

3. Whether reinstating civil arrest without weighing lesser coercive alternatives abused discretion.

4. Whether incarceration on a disputed discovery history required an individualized explanation.

5. Whether lesser alternatives and the realities facing a pro se litigant abroad went unaddressed.

6. Whether Appellant's explanations were dismissed as frivolous without reasoned engagement.

7. Whether contempt may rest on disputed facts resolved without a hearing or findings.

8. Whether indefinite incarceration was a permissible coercive remedy on this record.

9. Whether the purge condition is circular and alternatives were rejected without weighing effectiveness.

10. Whether the sole lesser-sanction assessment, made in 2024, predates the 2026 record.

11. Whether the parallel state proceeding permitting Zoom examination refutes any in-person necessity.

12. Whether the unspecified purge condition and nationwide-arrest directive rest on the wrong rule.

13. Whether the 2024 warrant's notice defects required consideration before reinstatement.

14. Whether the warrant was impermissibly used as leverage against Appellant's family.

15. Whether litigation delay and nonpayment were improperly treated as grounds for arrest.

16. Whether the warrant improperly expanded Avalon's motion into a case-wide contempt remedy.

17. Whether limited record notice of related proceedings should be permitted, not as evidence.

18. Whether any fugitive-disentitlement objection should be rejected.

## SUMMARY OF ARGUMENT

This appeal concerns an order directing the arrest of an unrepresented judgment debtor in Dubai and his indefinite confinement until he travels to New York for an in-person deposition. A.263–A.265.

The order cannot stand as entered. Civil contempt requires a clear and unambiguous command, clear and convincing proof of noncompliance, and the absence of diligent, reasonable efforts to comply. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Confinement is permissible only as the least power adequate to the end proposed, and only after the court weighs the harm, the probable effectiveness of the sanction, and the contemnor's resources. *Shillitani v. United States*, 384 U.S. 364, 371 (1966); *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). The April 10, 2026 Opinion made no finding of present ability to comply, treated causation as a "balancing test" the movant could opt out of, A.262, and resolved state of mind adversely without a hearing, ignoring the Zoom proposal preceding the warrant motion, A.93, the November 3, 2025 designation of November 9, A.177, and the December 24, 2025 offer of sworn notarized testimony under Dubai-court authorization, A.195, A.198.

Lesser alternatives were never weighed. Appellees' own subpoena permitted appearance "or virtually/via Zoom," A.16, and they had already deposed Appellant remotely, A.11; Rule 30(b)(4) permits remote depositions. The purge condition is

circular and unspecified: it commands travel to New York while directing the Marshals to arrest Appellant on arrival in any district, and never identifies which subpoenas must be satisfied. A.264.

The Rule 54(b) ruling presents a distinct error. No Rule 54(b) determination existed when the March 20, 2024 judgment was entered while claims against a codefendant remained unresolved. On April 10, 2026 the district court supplied that determination and dated it backward, relying in part on 2025 events including the codefendant's October 2025 dissolution. A.254–A.256. *Nunc pro tunc* relief records what was done; it does not supply what was not done. *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 64–65 (2020).

The order should be vacated and remanded, or at minimum the arrest directive vacated with instructions to consider remote testimony before any civil arrest. Any fugitive-disentitlement objection should be rejected. *Degen v. United States*, 517 U.S. 820, 828 (1996).

## STANDARD OF REVIEW

A contempt adjudication and sanction are reviewed for abuse of discretion, more exacting in the contempt context. *King*, 65 F.3d at 1058. Findings of fact are reviewed for clear error, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), and questions of law, including the scope of Fed. R. Civ. P. 4.1(b) and the availability of *nunc pro tunc* relief, are reviewed *de novo*. A Rule 54(b)

certification is reviewed for abuse of discretion, with the legal question whether the standard was applied at all reviewed *de novo*. *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992). Pro se filings are construed liberally. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

## STATEMENT OF THE CASE

The Honorable Denise L. Cote, United States District Judge for the Southern District of New York, rendered the decisions under review in these related § 16(b) enforcement actions: the April 10, 2026 Opinion and Order and companion civil-contempt and arrest Order, A.249–A.265, and the judgment entered April 13, 2026, A.266. Neither is reported.

### *A. The Judgment*

Appellees sued Appellant and MintBroker International, Ltd. under § 16(b) of the Exchange Act. On March 20, 2024 the district court entered judgments against Appellant of $8,219,175 and $8,073,283. A.13–A.14. MintBroker remained a defendant, stayed for Bahamian liquidation, and the judgment carried no Rule 54(b) determination. A.13–A.14; A.210–A.220.

Appellant was not a New York resident when these actions were filed in 2018 and is not one now. His first filing, a January 22, 2019 venue motion, argued that Puerto Rico was the only proper forum. A.75. He gave a San Juan address under oath at his Zoom deposition. A.12. He later relocated to Dubai, where he

lawfully resides and is domiciled, A.76; A.125, as documented below with Emirates identification, visa, tenancy, and employment records. A.171.

### *B. The First Warrant and the Service That Never Occurred*

At the July 23, 2024 conference the court declined a warrant on an oral application, stating that one would require "a number of findings" and "a number of showings," and that a further monetary sanction "would not be effective." A.61. The court then authorized alternative service, including three publications in Dubai's *Gulf News*. A.29–A.36. Counsel affirmed that publication arrangements had been made, A.38, and the September 20, 2024 warrant order relied on service by "publication, mail, email, and social media messaging." A.43–A.44. Nearly a year later counsel disclosed the publication never occurred. A.63.

### *C. The 2025 Deposition Sequence*

The first warrant was vacated September 23, 2025 "without prejudice to renewal," A.82–A.86, and the deadline was extended to November 10, 2025. A.89. Appellees' judgment-debtor subpoena permitted appearance in New York "or virtually/via Zoom," A.16, and Appellant had already been deposed by Zoom in 2022. A.11. His remote-deposition request was denied October 18, 2025. A.90–A.92. On November 3, 2025 he offered to appear November 9; counsel replied three days later fixing November 10 in Manhattan. A.177; A.189. On November 7, 2025 Dubai insolvency proceedings commenced. A.123–A.132.

### *D. Reinstatement*

Appellees moved on December 2, 2025 to reinstate the warrant. A.155–A.161. Appellant opposed, A.166–A.180, and on December 24, 2025 offered sworn notarized testimony subject to Dubai-court authorization. A.195; A.198. On December 16, 2025 the court denied his sanctions motion, stating that if he sought affirmative relief he "should be prepared to appear in New York." A.181–A.182. On January 8, 2026 the magistrate judge recommended reinstatement, A.200–A.209, and Rule 54(b) certification, A.210–A.220. Appellant objected. A.221–A.231.

On April 10, 2026 the court adopted both Reports, certified the March 20, 2024 judgment under Rule 54(b) *nunc pro tunc*, and reinstated the warrant, directing arrest in any district and confinement until Appellant complies with outstanding subpoenas and appears in person in the Southern District of New York. A.249–A.265. Judgment was entered April 13, 2026, A.266, and this appeal followed. A.269; A.270.

## ARGUMENT

## I. THE DISTRICT COURT ABUSED ITS DISCRETION BY BACKDATING A FIRST-TIME RULE 54(b) DETERMINATION

### *A. The issue is the propriety of retroactivity, not whether later certification is categorically permitted*

A Rule 54(b) determination is reviewed for abuse of discretion. The reviewing court must be able to "probe the 'brief, reasoned statement' " supporting

entry of judgment. *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992). A conclusory certification is insufficient. *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980).

This is a narrow challenge. Gentile does not contend that every later Rule 54(b) certification is impermissible, that the March 20, 2024 judgment A.13 must be reopened on the merits, or that every enforcement order was automatically void. Even assuming that the District Court had authority to certify the judgment retroactively, it abused its discretion by backdating a first-time determination, relying materially on later developments, failing to address Gentile's preserved objection and enforcement-related prejudice, and not explaining why prospective certification or resolution of Mintbroker's status was inadequate.

The question is therefore not whether the March 2024 judgment had no legal effect. It is whether the record justified treating a discretionary determination made in April 10, 2026 A.254 as though it had been made in March 2024.

### *B. The record supports the conclusion that the April order made, rather than memorialized, the Rule 54(b) determination*

FRCP 54(b) requires an express determination that there is no just reason for delay. When the March 20, 2024 judgment was entered, Mintbroker remained a named defendant, its claims were stayed rather than adjudicated or dismissed, and the judgment contained no express Rule 54(b) determination.

The April 10, 2026 order identified no 2024 order or docket entry making that determination. Instead, it directed that the judgment be certified *nunc pro tunc* and relied on the parties' treatment of the judgment as final, Gentile's completed appeal, Mintbroker's *alleged* abandonment of its claims, and Mintbroker's October 2025 dissolution A.256.

That distinction matters under *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 64–65 (2020). A *nunc pro tunc* order may memorialize an act previously taken; it may not create a historical judicial determination that the record does not show. *Acevedo Feliciano* does not prohibit all retroactive Rule 54(b) certifications. Gentile relies on it only for the narrower proposition that a court must identify the earlier act it is memorializing.

The April 10, 2026 order identified no contemporaneous Rule 54(b) determination. Its explanation instead rested materially on facts that arose after judgment, including Mintbroker's dissolution and the completed appeal. The order therefore appears to exercise Rule 54(b) discretion for the first time in 2026 rather than record a determination made in 2024.

Appellees' reliance on the judgment's "Final Judgment" designation, Gentile's appeal, and the parties' enforcement conduct does not establish that the required Rule 54(b) determination was made when judgment entered. Those circumstances may support later certification or bear on the equities. They do not

themselves constitute the court's express finding that there was no just reason for delay.

### *C. The District Court did not explain why retroactive, rather than prospective, certification was necessary*

The District Court had identified facts predating Mintbroker's dissolution that could support certification, including Appellees' assertion that they had not pursued claims against Mintbroker in the Bahamian liquidation. A.256. Mintbroker's later dissolution and the related dismissal proceedings reinforced the practical-finality rationale. But those developments did not explain why certification had to be effective as of March 20, 2024.

The court could have: (1) certified the judgment prospectively as of April 2026; (2) resolved Mintbroker's status before entering a new judgment; or (3) explained why neither course adequately protected the parties' interests. It did none of those things. Instead, it backdated the certification and then treated Gentile's remaining finality arguments as moot.

A stay does not itself adjudicate or dismiss claims. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). Nor does failure to pursue claims in a foreign liquidation, without a federal dismissal or adjudication, by itself establish that those claims ceased to be pending. The point is not that such a determination was unavailable, but that the court did not adequately explain why a determination made in 2026 should be treated as having been made two years earlier.

Rule 54(b) is intended to avoid piecemeal appeals and is reserved for the unusual case. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980); *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980). The April order did not sufficiently analyze the temporal distinction, the availability of prospective relief, or the consequences of retroactivity.

***D. Leonhard and Kaufman do not compel retroactivity here***

The District Court relied on *Leonhard v. United States*, 633 F.2d 599, 611 (2d Cir. 1980) and *Kaufman & Ruderman v. Cohn & Rosenberger*, 177 F.2d 849, 850 (2d Cir. 1949). Those decisions recognize that later certification may, in appropriate circumstances, preserve appellate review. Neither requires retroactivity whenever a district court later determines that immediate review would have been appropriate.

In *Leonhard*, the court emphasized the absence of prejudice to the nonappealing party. In *Kaufman*, the finality issue had not been raised, and the Second Circuit permitted a limited procedure to preserve an affirmance already entered. Here, Gentile preserved the objection A.221. The District Court identified no earlier Rule 54(b) determination, relied in part on later facts, and used retroactivity to reject Gentile's objection as moot.

Those differences do not make retroactive certification legally impossible. They do, however, require the District Court to explain why retroactivity was equitable and necessary on this record. The April 10, 2026 order did not do so.

### *E. The prejudice analysis did not address Gentile's separate, concrete prejudice*

The District Court focused principally on prejudice to Avalon, reasoning that Avalon would be harmed if the judgment were vacated. That consideration may support leaving the merits judgment undisturbed. It does not resolve the separate prejudice caused to Gentile by backdating the certification.

Gentile does not claim that retroactivity changed the merits disposition or deprived him of an appeal that already occurred. His prejudice is narrower but concrete. The April 10, 2026 order: (1) made certification effective as of March 20, 2024; (2) treated his remaining finality arguments as moot; and (3) reinstated a civil-arrest warrant in the same order. Thus, retroactivity removed a preserved procedural objection and supplied a basis for treating the judgment as immediately final during the period in which enforcement proceedings occurred. That is sufficient prejudice to require consideration, even if the underlying money judgment remains intact.

Appellees may contend that the arrest warrant rested independently on Gentile's discovery and deposition violations. If so, that contention confirms the need for a precise analysis of whether and to what extent retroactive certification

affected enforcement. Gentile does not seek automatic vacatur of every enforcement order. He seeks reconsideration of orders to the extent retroactivity supplied their procedural foundation or materially affected the court's analysis.

### *F. The joint-judgment structure required a fuller Rule 54(b) analysis*

The March 2024 judgment awarded damages to both Avalon and New Concept while claims against Mintbroker remained unresolved. That structure did not automatically preclude Rule 54(b) certification. It did, however, require analysis of: (1) the relationship between the claims against Gentile and the stayed claims against Mintbroker; (2) the risk of duplicative or inconsistent review; and (3) the consequences of certifying relief obtained by two plaintiffs while one original defendant remained unresolved. The District Court principally relied on Mintbroker's later dissolution and the absence of prejudice to Avalon. A.256 It did not adequately explain why those considerations justified retroactive certification as to both plaintiffs or why prospective certification or formal resolution of Mintbroker's status was inadequate.

## II. THE DISTRICT COURT ERRED IN CONSTRUING THE SEPTEMBER 23, 2025 AND THE SEPTEMBER 26, 2025 ORDERS AS AUTHORIZING AUTOMATIC REINSTATEMENT OF THE ARREST WARRANT

The District Court said Appellant "undoubtedly failed" to meet the deadline because the orders required an in-person deposition in the Southern District of New York by November 10, 2025. A.259 In-person is a face to face, which can be

accomplished on Zoom with a real time connection to observe faces, expressions and body language in real time. The April 10, 2026 order, did not prohibit Zoom, did not prohibit the deposition being digitally in NY, all of which could have been excluded to prohibit what the lower court resolved in its favor.

Appellant argued that the operative orders did not eliminate remote means or make the warrant self-executing. A.225; A.166. The delay in communication from Appellees to have demanded the November 10, 2025 date in NY yet feigning a lack of awareness that Appellant was still trying to coordinate logistics from Dubai in a few short days during shut down in flights, A.177; A.189; A.166 and A.225 n.1 [government shut down ended November 13, 2025] and *https://www.nbcnewyork.com/news/local/faa-airport-list-cut-traffic-jfk-laguardia-newark-government-shutdown/6415113/.* These reasons matter because they show whether noncompliance was willful defiance or a scheduling impasse exacerbated by Appellees' rigid position to take advantage that I live in and am a resident of Dubai.

The District Court rejected these arguments in summary fashion. A.259. This Court should review that construction closely because the scope of the underlying directive determines the validity of the contempt remedy.

***A. The District Court did not adequately address whether the operative orders were sufficiently clear to justify arrest.***

A contempt order requires a clear and unambiguous underlying directive. See *John Z. v. New York City Dep't of Educ.*, 175 F.3d 134, 143 (2d Cir. 1999); *United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995). Here, the District Court stated that the September 23, 2025 order required an "in-person deposition within the Southern District of New York," A.253 and that the September 26, 2025 order simply extended the deadline to November 10, 2025. A.89. But Gentile argued that the operative communications and orders did not dispose of all scheduling and logistical issues, and that the court's later framing was broader and more absolute than the contemporaneous record. A.177; A.189.

To the extent Appellees will rely on the District Court's statement that the deposition orders were clear, Gentile preserved the argument that clarity was disputed, that the parties' own conduct reflected uncertainty , and that the record[1] should have been developed more fully before the extraordinary remedy of arrest was reinstated.

1 There was no reason not to believe there could have been a second order providing a new deposition date since Appellees' attorney Miriam Tauber not only delayed her response to Gentile but it should have been apparent they were not going to agree as to 11/10/25 deposition date and that would have opened up for a request to the District Court to set a new date.

The clarity of the underlying deposition command and the existence of a valid basis for indefinite coercive incarceration are analytically distinct questions. The September 2025 Orders lifted the first warrant "without prejudice to renewal," A.86, A.87, which made reinstatement neither automatic nor self-executing A.225, A.166; it required a fresh judicial determination on the 2026 record as to diligence, causation, present ability to comply, necessity, proportionality, probable effectiveness, and the availability of lesser coercive measures. A clear order tells the Court what Gentile was required to do; it does not tell the Court that confinement was the least power adequate to obtain it.

What remains are the second and third elements, which the District Court did not adjudicate under the correct standard. Contempt requires that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995); see CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016); Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004). The clear-and-convincing standard governs the whole showing, including diligence. Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (per curiam). Diligence was contested on a record of affirmative, documented efforts: production of post-judgment discovery, A.81,

A.93, A.95, A.166; Appellees had deposed Gentile below by Zoom A.11 and offered such in their subpoena at issue here A.16 and Gentile living in Dubai proposed to be deposed by Zoom before Appellees moved for the warrant, A.93; Gentile written offer to obtain Dubai-court authorization and provide sworn notarized testimony, A.195, A.198; Gentile notified opposing counsel's request for a date on November 3, 2025 that he could appear on November 9, 2025, the day before the deadline, A.177. Gentile also identified the compressed sequence that followed: Appellees' counsel replied three days later on November 6, 2025 fixing Monday, November 10, 2025 at 9:30 a.m. in Manhattan. A.189. This record shows: he and Appellees counsel were negotiating a deposition date he could meet as they have done before, then a deposition window was set by counsel four days before it closed, A.189; his earlier proposal to be examined remotely came before any warrant application, A.93; and his December 24, 2025 offer to obtain Dubai-court authorization and give sworn notarized testimony remained open when the sanction issued, A.195. Gentile argues that a court finding contumacy by clear and convincing evidence had to reckon with it, and this record shows no such reckoning. The same is true of the UAE materials. "[T]he reasons for [a party's] failure to comply" with a discovery order are relevant to "the path which the District Court might follow" in selecting a sanction. Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 US 197, 208

(1958). A District Court may determine the content of foreign law on any relevant source, FRCP 44.1, and nothing prevented it from doing so here. Treating the filing as a forfeited comity argument, A.182, answered a contention Gentile did not make and left the issues he did raise unaddressed. The District Court did not weigh those facts against a clear-and-convincing yardstick. It held instead that Gentile "cites no authority indicating that this Court must employ a balancing test of fault to determine the relative causes of Gentile's noncompliance," and concluded that the Orders "were clear" and that he "failed to do so." A.262. But causation is not a balancing test the movant may opt out of; it is part of what clear and convincing proof of contumacy means. Where the third King element asks whether the contemnor "has not diligently attempted to comply in a reasonable manner," the reasonableness of the attempt cannot be assessed while declining to consider what obstructed it. Nor did the District Court make any finding about present ability to comply. It observed that Gentile had said he could be in New York on November 9, A.179, A.260 n.3, but a party's own statement of availability made while an arrest application was pending is not a finding, and it does not address ability to comply with the operative purge condition—travel to the United States after an arrest order issued. A court entering a coercive sanction must consider "the initial appropriateness of a contempt sanction in light of the circumstances, including the contemnor's ability to pay." Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d

106, 111 n.3 (2d Cir. 1987). Gentile bears a burden of production on inability, United States v. Rylander, 460 US 752, 757 (1983), and he met it with the record described above; Rylander does not relieve the court of its own task. Dole Fresh Fruit, 821 F.2d at 111 n.3. Because the material facts on diligence and causation were disputed and were resolved on the papers, and because no finding on ability to comply was made, the contempt adjudication cannot stand as entered.

**III. THE DISTRICT COURT ABUSED ITS DISCRETION IN REINSTATING A CIVIL ARREST WARRANT AND ORDERING INCARCERATION WITHOUT ADEQUATELY CONSIDERING LESSER COERCIVE ALTERNATIVES.**

Civil contempt is coercive, not punitive. A court may not imprison a litigant simply because the court concludes that the litigant has been difficult, obstinate, or unpersuasive or find him for whatever reason, odious. The sanction must be tied to present coercive necessity, and the court must consider whether other means will suffice. See *United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994); *Shillitani v. United States*, 384 U.S. 364 (1966).

That principle matters here because the District Court's April 10, 2026 order escalates directly to arrest and detention. A.263. The order does not meaningfully explain why ordinary coercive tools were inadequate in light of the surrounding record, including opposing counsel's initial offer of Zoom and their slow moving responses as to the November 2025 dates, the history of motion practice, the

scheduling disputes, the claimed logistical obstacles, and the possibility of remote or staged compliance. A.259 ; A.200; A.166 compared with A.249.

Appellant did not ignore discovery-he submitted documents requested [obtained court approval for some redactions A.153], he engaged opposing counsel as to dates and their initial offer of Zoom. The court below was required to ask whether arrest was genuinely the least coercive means available, especially where the underlying dispute concerned the location and mode of deposition, not an outright refusal to participate in discovery. The court's opinion instead treats Appellant's explanations as false in bulk, collapsing distinct issues into a single finding of noncompliance. A.259.

The R&R at issue here A.200, accepted in full by the court below from Judge Lehrburger, faulted me for delay that were attributable to COVID shut down of the courts below that caused discovery complications and the summary judgment decided by Judge Broderick two years after the motions where submitted. A.225, mentioned because they bear directly on coercion and proportionality.

## IV. THE ORDER SHOULD BE VACATED BECAUSE IT CONVERTS A DISPUTED DISCOVERY HISTORY INTO COERCIVE INCARCERATION WITHOUT A SUFFICIENTLY INDIVIDUALIZED EXPLANATION

Even if the Court concludes that some coercive relief was permissible, the April 10, 2026 order is overbroad. A.263. It authorizes the Marshals Service to use

force, permits entry onto premises, and orders incarceration until compliance, all on the premise that the discovery dispute was simple and the noncompliance straightforward. But Appellant's filings, and the record excerpts the District Court cited, suggest a more complex history involving scheduling, remote-deposition issues, external constraints, and parallel proceedings. A.166; A.177; A.195, A.198.

At minimum, the case should be remanded for a more narrowly tailored contempt determination that addresses: (1) what exactly Appellant was ordered to do; (2) whether plaintiffs contributed to the impasse; (3) whether a remote or conditional deposition could secure the same discovery; (4) whether incarceration was truly necessary; and (5) whether the Rule 54(b) certification was valid.

## V. THE COURT FAILED TO GRAPPLE WITH LESSER-COERCIVE ALTERNATIVES AND THE PRACTICAL REALITIES FACING A PRO SE LITIGANT ABROAD

The contempt order commands arrest and detention. A.263 3. That is the most coercive civil sanction available, and a court using it must explain why less drastic measures would not work. See *Turner v. Rogers*, 564 U.S. 431 (2011). Here, the District Court's explanation is inadequate because it does not meaningfully address: (1) remote deposition proposals or other alternatives; (2) whether the Appellees themselves contributed to the impasse; (3) whether Gentile's ability to comply was affected by timing, travel, or foreign-residency constraints; (4) whether ordinary motion practice was sufficient; and (5) whether

incarceration would, in practice, impair Appellant's ability to litigate his own release.

The fact that Appellant is proceeding *pro se* and resides abroad makes these concerns more serious, not less. Detention may not be civil in any meaningful sense if it forecloses the litigant's ability to access the court to seek relief from the very order that deprives him of liberty. A.181.

## VI. THE COURT TREATED APPELLANT'S EXPLANATIONS AS FRIVOLOUS WITHOUT ENGAGING THEM IN A REASONED WAY.

The opinion repeatedly labels Appellant's positions "false," "frivolous," or "cynical." A.259, A.254, A.213. Those characterizations do not substitute for analysis. A court may reject a litigant's explanation, but it must still address the explanation on the merits. See *Anderson v. Bessemer City*, 470 US 564 (1985).

A reasonable observer could conclude that the District Court resolved the contempt issue in a highly adversarial posture, not a neutral one. The better appellate point is not judicial bias as such, but that the court's tone and structure show it did not give the record-based questions the close consideration that a deprivation of liberty requires.

## VII. THE CONTEMPT ADJUDICATION RESTS ON DISPUTED FACTS RESOLVED WITHOUT A HEARING AND WITHOUT THE REQUIRED FINDINGS

A contempt adjudication is reviewed for abuse of discretion, with legal conclusions reviewed *de novo*; the standard is "more exacting than under the ordinary abuse-of-discretion standard" because of the interests at stake. *United States v. Local 1804-1, International Longshoremen's Ass'n*, 44 F.3d 1091, 1095 (2d Cir. 1995); *Perez v. Danbury Hospital*, 347 F.3d 419, 423 (2d Cir. 2003).

Gentile's freedom was at stake and deserves a *de novo* review from the consideration he received below.

### *A. The District Court engaged in characterizing Gentile's pro se submission*

*instead of analyzing his reasons against contempt*

The submissions the District Court rejected were the filings of an unrepresented litigant. This Court's rule is settled: pro se papers are "construe[d] … liberally" and "interpret[ed] … to raise the strongest arguments that they suggest," and the solicitude owed is at its height where "a liberty interest" is at stake. Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006). The Report instead resolved Gentile's state of mind adversely and in the aggregate: he sought to "vacate the warrant by feigning a willingness to cooperate," A.203 adopted in A.249; he "feigned his willingness" to be deposed, A.203; he "strung Plaintiffs along," A.205; his offer of notarized sworn testimony "rings hollow,"

A.207; and his motion "should be seen for what it is: a cynical attempt filed after losing." A.213 . Does this not sound like pre-determination to have been so blacklisted as such? Why was his gall to defend himself-a non lawyer- so offensive?

Gentile does not contend that a District Court must credit a *pro se* litigant, or that adverse credibility findings are forbidden. He contends that these were not findings. They were characterizations reached on paper, without a hearing, without testimony, and without engaging the documents that contradicted them—Gentile's November 3, 2025 designation for November 9, 2025 deposition A.177; the Zoom proposal that preceded the warrant motion, A.93; and the December 24, 2025 written offer for Zoom and other methods, A.195, A.198. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 US 564, 573 (1985) (quoting *United States v. US Gypsum Co.*, 333 US 364, 395 (1948)). Findings of contumacious intent that rest on adjectives rather than on the record cannot carry a clear-and-convincing burden, and the imbalance between an unrepresented judgment debtor and two represented corporate creditors is a reason for more record development before incarceration, not less.

### *B. Reinstatement was discretionary, and no fresh determination was made on the 2026 record.*

The September 23, 2025 Order lifted the previous warrant "without prejudice to renewal." A.86. "Without prejudice to renewal" preserves an application; it does not pre-decide one. The District Court itself had earlier held A.61 Transcript dkt 354 that before issuing such a warrant it was required to make "a number of findings" and to require "a number of showings" from counsel, citing CBS Broadcasting Inc. v. FilmOn.com, Inc., 814 F.3d 91, 101–02 (2d Cir. 2016). Nothing in the September 2025 Orders at issue here relieved the court of that obligation on renewal, and a warrant that reissues automatically upon a missed date is a penalty for the past rather than a coercive measure addressed to the present. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827–29. The 2026 record—post-judgment production of discovery documents, a remote-Zoom-deposition proposal, an offer of notarized testimony, and Dubai insolvency proceedings—was materially different from the record of July 2024, [A.93, A.195, A.123, A.49] and it was never assessed as such.

## VIII. INDEFINITE INCARCERATION WAS NOT A PERMISSIBLE COERCIVE REMEDY ON THIS RECORD.

Civil contempt is coercive, not punitive. A court may not imprison a litigant simply because the court concludes that the litigant has been difficult, obstinate, or unpersuasive. The sanction must be tied to present coercive necessity, and the

court must consider whether other means will suffice. See *United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994); *Shillitani v. United States*, 384 U.S. 364 (1966). Even if contempt were sustainable, the remedy was not. Civil contempt sanctions are remedial and coercive, not punitive, and a non-compensatory sanction is civil "only if the contemnor is afforded an opportunity to purge." *Int'l Union, UMWA v. Bagwell*, 512 US 821, 829 (1994); *see Hicks v. Feiock*, 485 US 624, 633 (1988) (imprisonment is remedial where "the defendant stands committed unless and until he performs the affirmative act required by the court's order"). And the court's power is limited to "the least possible power adequate to the end proposed." *Shillitani*, 384 US at 371 (quoting *Anderson v. Dunn*, 19 US (6 Wheat.) at 231).

## IX. THE PURGE CONDITION IS CIRCULAR, AND THE ALTERNATIVES WERE REJECTED WITHOUT WEIGHING EFFECTIVENESS

The order provides that Gentile "shall be incarcerated until he complies with any outstanding subpoenas in this case and submits to an in-person deposition in the Southern District of New York." A.264. The only way to satisfy that condition is to travel into the United States. The same order directs the Marshals Service to arrest him "in any district of the United States" on arrival, using force and entering premises if necessary. A.264. The R&R saw the circle and treated it as an answer:

"Gentile can obviate the 'legal risk' of the arrest warrant by submitting to the deposition as ordered." A.207 n.6. That reasoning assumes the conclusion. A purge condition whose performance requires submitting to the sanction is not a realistic opportunity to purge. *Bagwell*, 512 US at 829. The alternatives were rejected on grounds that never reached effectiveness. Sworn written testimony was dismissed as "holl[ow]" because Dubai authorization was uncertain and might be slow, and because written answers are "hardly a suitable substitute" for live questioning. A.207 n.6. Perhaps so—but the comparison the law requires is not between a written deposition and a perfect deposition; it is between the sanction chosen and the measures that might obtain compliance at lesser cost to liberty. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). A remote deposition preserves live questioning and follow-up in full, and it was the very modality the operative subpoena contemplated. A.16; *see* FRCP 30(b)(4). The District Court was free to insist on in-person testimony as a matter of case management; it was not free to choose indefinite incarceration without weighing whether a less drastic measure would produce the testimony it wanted, *i.e.* the Zoom noticed by Appellees at first. Nor did the District Court assess whether continued noncustodial enforcement or staged compliance measures could accomplish the discovery objective before it turned to confinement. The measures already on this record were cumulative and sequential rather than exclusive: a

remote live examination, FRCP 30(b)(4); a date-certain compliance order specifying what production would satisfy the outstanding subpoenas; sworn notarized testimony under Dubai-court authorization, A.195 , A.198, a letter rogatory or other judicial-assistance request; production through the insolvency trustee appointed in the Dubai proceedings, A.123; and monetary or progressive sanctions tailored to Gentile's current financial condition if that condition supports them. Gentile does not contend that a District Court must mechanically exhaust every conceivable sanction before ordering confinement. *Perfect Fit Industries* and *Dole Fresh Fruit* require something narrower and unmet here: a reasoned assessment, on the record then before the court, of the probable effectiveness of the suggested measures and of the burden each would impose. *Perfect Fit Indus.*, 673 F.2d at 57; *Dole Fresh Fruit*, 821 F.2d at 110. The April 10, 2026 decision selected indefinite incarceration without conducting that assessment. A.249

## X. THE DISTRICT COURT'S ONLY ASSESSMENT OF A LESSER SANCTION PREDATES THE RECORD ON WHICH INCARCERATION WAS ORDERED.

When the purpose of a sanction is coercive, "the District Court has broad discretion to design a remedy that will bring about compliance," but "[s]everal factors should be considered in the exercise of this discretion," including the "character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about [compliance],"

and the "amount of [the contemnor's] financial resources and the consequent seriousness of the burden to [him]." *Perfect Fit Indus.*, 673 F.2d at 57. This Court has vacated a coercive sanction where it was "not satisfied that the District Court considered the factors that must be weighed before entry of a coercive remedy." *Dole Fresh Fruit*, 821 F.2d at 110. The District Court considered a lesser sanction once. At the July 23, 2024 conference the court denied an oral bench-warrant application and stated that "on this record an additional monetary sanction would not be effective in obtaining compliance with the restraining order, the subpoenas or the deposition notice." A.61. The court tied that assessment to the record then before it, and paired it with a requirement of "a number of findings" by the court and "a number of showings" by counsel before it would issue a warrant. A.61. The assessment was never refreshed. Between July 2024 and April 2026 the record changed materially: Gentile produced post-judgment discovery, A.81, A.93, A.95, A.166; proposed a remote deposition, A.93; offered sworn notarized testimony under Dubai-court authorization, A.195; and commenced insolvency proceedings in the Dubai Courts on November 7, 2025, A.123– A.132. Financial condition bears directly on the two *Perfect Fit* factors on which the 2024 assessment turned —"the probable effectiveness of any suggested sanction" and "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to [him]." 673 F.2d at 57. Neither the R&R A.200 nor the April 10, 2026 Opinion

addresses either factor on the current record, and neither explains why a measure short of indefinite incarceration would now fail. The UAE opinion is directly probative of the first factor, because it identified lawful routes to the same discovery—Dubai-court authorization, a letter rogatory, or production through the trustee. A.195. A record containing identified, untested alternatives is not a record on which the most severe civil sanction can be shown to be the "least possible power adequate to the end proposed." *Shillitani,* 384 US at 371. That is the omission *Dole Fresh Fruit* identifies: this Court vacated a coercive sanction because it was "not satisfied that the District Court considered the factors that must be weighed before entry of a coercive remedy." *Dole Fresh Fruit Co.,* 821 F.2d at 110.

## XI. A PARALLEL NYS PROCEEDING, COMMENCED BY APPELLEES, IN WHICH THEY CAN EXAMINE GENTILE BY ZOOM, REFUTES THEIR CLAIM OF NECESSITY OF AN IN-PERSON SDNY DEPOSITION

The least-restrictive-means inquiry is not hypothetical here. In a parallel New York state-court proceeding commenced by Appellees in Westchester County, in early 2026, a co-defendant noticed Gentile for a deposition by Zoom, and Gentile was prepared to appear. Gentile also offered Appellees an examination by video conference, and Appellees' counsel refused in writing on June 18, 2026. Avalon NYSCEF Doc. Nos. 49, 50, 51. The point is evidentiary, not jurisdictional: Appellees possess an ordinary, non-custodial route to Gentile's testimony and have

declined it yet again. A record in which the movant has refused an available lesser means cannot establish that the greatest means is necessary. Perfect Fit Industries, Inc. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir. 1982). Plaintiffs' conduct in the SDNY proceeding presents the same inconsistency. Their original judgment-debtor subpoena expressly required Gentile to appear in New York "or virtually/via Zoom." A.16 Yet after Gentile, who lives in Dubai, proposed remote testimony, Appellees abandoned the noticed Zoom alternative. They instead insisted that he travel to New York for an in-person deposition, set a date and location in Manhattan, and threatened to seek reinstatement of the arrest warrant if he did not appear physically. A.158. Appellees then obtained the order on appeal here directing that Gentile be arrested and detained until he submitted to an in-person deposition in the Southern District of New York. A.189 The significance is not that Appellees lacked any legitimate interest in live questioning or follow-up questions. It is that they converted a discovery dispute that their own subpoena had framed as permitting remote testimony into a basis for physical compulsion. A.264 While Gentile lives in Dubai, Plaintiffs declined to pursue the less coercive alternative they had initially noticed and instead demanded international travel as the condition for avoiding arrest. A.200 That sequence supports the limited inference that the warrant's practical function may be to compel Gentile's physical surrender, not merely to obtain information. The Westchester Zoom issue is

especially important. If, as the parallel NY state-court record reflects, plaintiffs can examine Gentile by Zoom or through ordinary New York discovery procedures in Westchester, that fact shows there are real, available, less coercive alternatives to the SDNY arrest-and-detention mechanism. That context matters both for fugitive disentitlement and for the merits, because it undercuts any claim that physical arrest is the only practical means to obtain discovery. Put differently, the appeal is not an attempt to use the courts while evading them. It is an attempt to obtain review of an order that escalates a discovery dispute into cross-border arrest, despite the existence of parallel proceedings and remote alternatives.

## XII. THE PURGE CONDITION IS UNSPECIFIED, AND THE NATIONWIDE-ARREST DIRECTIVE RESTS ON THE WRONG RULE AND IS OVER COERCIVE

### *A. Lack of Specificity as to Purge conditions*

The Supreme Court's civil-contempt cases confirm the point where the contemnor is unrepresented. In *Turner v. Rogers*, 564 U.S. 431, 442–43 (2011), the Court held that where an unrepresented contemnor faces incarceration, due process requires "alternative procedural safeguards," including notice that ability to comply is the critical question, an opportunity to be heard on that question, and "an express finding by the court that the [contemnor] has the ability" to comply. *Id* . at 447–48. None of those safeguards was supplied here. And coercive relief must be no broader than necessary: "the [court's] remedial powers are limited," and a court

must use "the least possible power adequate to the end proposed." *Shillitani v. United States,* 384 U.S. 364, 371 (1966).

### *B. Lack of specificity as to what subpoenas were outstanding*

The Order conditions Gentile's release on compliance with "any outstanding subpoenas in this case." A.183. It does not identify which subpoenas those are, which Appellee issued them, or what production would satisfy them. Gentile does not suggest the motion was improperly brought: it was filed on behalf of both Appellees/Judgment Creditors, in both captioned actions. A.264. The defect lies in the purge condition itself. A condition framed by reference to unidentified obligations gives the contemnor no ascertainable measure of what he must do to be released, and it cannot be reconciled with the requirement that the underlying command leave "no uncertainty in the minds of those to whom it is addressed." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) quoting *Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988)*). On remand the purge condition should be stated with the specificity that a liberty-restraining order requires. The nationwide-enforcement directive warrants the same attention. The Order invokes FRCP 4.1(b) for the proposition that the contempt order "may be served and enforced in any district." A.155. Rule 4(b) governs the issuance of summonses; the provision addressing the territorial reach of civil-contempt orders is Rule 4.1(b), which permits nationwide service and enforcement only of "[a]n

order committing a person for civil contempt of a decree or injunction issued to enforce federal law," and confines any "other order in a civil-contempt proceeding" to the forum state or within 100 miles of its issuance. The order under review enforces post-judgment discovery in aid of executing a money judgment between private parties. Whether that is "a decree or injunction issued to enforce federal law" within Rule 4.1(b) is a question the District Court did not address under the correct rule, and it should be addressed before any nationwide arrest authority issues.

### *C. The Order's force, entry, and indefinite-detention terms are broader than any coercive purpose requires.*

The Order authorizes the Marshals Service to "take all necessary measures" to effect enforcement "in any district of the United States," to enter Gentile's premises, to use the "minimum degree of non-deadly force necessary," and to hold him "until he complies … or until further Order of this Court." A.264. Nothing in the record explains why each of those terms is needed to obtain a deposition. Gentile resides in Dubai; there was no finding that he was evading process within the United States, no finding that a lesser directive would fail, and no outer limit on the detention. A coercive contempt order must be tailored to the compliance sought and must leave "no uncertainty in the minds of those to whom it is addressed." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995); see United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 44 F.3d 1091, 1096 (2d Cir. 1995).

### *D. District Court Infringed on Gentile's Right to Conduct His own Defense*

The detention terms also collide with Gentile's right to conduct his own case. A civil party "may plead and conduct their own cases personally." 28 USC § 1654. Gentile is his own counsel; indefinite custody, entered on a paper record, would remove the only person litigating his side of the case at the moment he most needs to move for relief from the order itself. That is not an argument that a *pro se* litigant is immune from coercive sanctions. It is a factor bearing on "the probable effectiveness" of this sanction and on "the consequent seriousness of the burden," that the District Court did not weigh. *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982).

### *E. The Warrant Was Used as Leverage Rather Than as a Necessary Last Resort*

The record also demonstrates why this Court should scrutinize the District Court's assertion that indefinite incarceration was necessary to obtain discovery. Appellees did not merely seek a narrowly tailored order compelling testimony. They repeatedly pursued an arrest warrant while other means of obtaining Gentile's evidence remained available, and one attorney for the Appellees, Mr. Lopez, told Gentile that the Court would issue another warrant in mid-February 2026. A.264; A.245. Mr. Lopez even relished that if Gentile came to NY for a

deposition, that he would be first arrested, acknowledging that volunteering to come to NY would be arrest first, a punitive measure . A.246.

A civil warrant is supposed to compel compliance, not operate as a default punishment or leverage device. A.246. As leverage they also attempted to obtain seizure of what they unilaterally claimed was mine without due process by utilizing a pre-conference letter. *Id.*

As to leverage, Appellees' counsel spent more time talking about arrest that actually trying to depose me: Appellees feign ignorance of my whereabouts in Miami during my trial with the SEC. See Transcript of the July 23, 2024 conference filed on 2/19/25 as Docket 354, A.49 where it was acknowledged they knew I was on trial in Miami, they ignore it, my then appellate counsel, Mr. Fleming, informed them of not being in touch with me, the contact numbers he had for me where shut down, the mail sent to my former Puerto Rico address came back, that PACER had the information of my Miami trial, yet orally asked for my arrest claiming I refused to participate in discovery and I fled the jurisdiction while they knew I left NY state well before I was sued in 2018 in the court below and was living in the Bahamas and Puerto Rico A.246.

When my prior counsel - Adam Ford- in the court below and my counsel for the Miami SEC matter filed a motion for sanctions against Mr. Lopez, counsel for Appellees, when he admitted to Mr. Ford he never published the requisite notice

required-not an option-by the court below-in the Dubai's *Gulf News*, he characterized a warrant against me as leverage. A.49 Obtaining an arrest warrant against me without following a court order, not even finding out the procedure to even suggest such publication as ordered ( A.63), filing an affidavit that was somehow accepted stating he "made arrangements" which is on its face vague, and nothing more, is how for sure Gentile was not notified of the contempt hearing, yet the court below ignores these red flags and used my non appearance as willful A.34 and denied Mr. Ford's motion.

These statements and action should prove subjective bad faith by itself and should strongly support the objective point that arrest was being used to increase pressure rather than because no lesser method could secure discovery in the manner they *demanded*.

This history supports the conclusion that the warrant functioned as leverage[2] —an instrument to increase pressure on Gentile—rather than as the least restrictive means of securing compliance.

---

2 In addition, as discussed infra , in a parallel NYS proceeding commenced in March 2026 by the Appellees, counsel for Gentile's co-defendant noticed his deposition by Zoom, confirming that remote examination was an available and practicable means of securing live testimony. Of course, Appellees refused to agree and now the matter is to be determined by Judge Torrent. Avalon Holdings Corp. v. Gentile , Index No.58930/26, NYSCEF Doc. No. 49 (Sup. Ct. Westchester County), hereinafter cited as " Avalon, NYSCEF Dkt No."

The distinction matters. Civil contempt is coercive only when its sanction is reasonably calculated to compel the ordered act; it may not become punishment for past noncompliance or a mechanism for imposing pressure unrelated to the specific discovery sought. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827–30 (1994). And although a District Court has broad discretion in fashioning coercive relief, this Court requires consideration of the threatened harm, the probable effectiveness of the proposed sanction, the contemnor's resources, and the burden imposed. *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982). The remedy must remain "the least possible power adequate to the end proposed." *Shillitani v. United States*, 384 U.S. 364, 371 (1966).

Here, the record does not show that Appellees exhausted lesser measures before seeking renewed arrest authority to incarcerate, choosing instead to ignore

any reason why the alternatives posed by Gentile to obtain the information they[3] supposedly need. Any judgment creditor would not only take Gentile up on his offer for a Zoom deposition, and if not sufficient or needs supplementation, move for an order to further depose. Reinstatement of the warrant here rather than demonstrating why alternatives could not obtain the information they claimed to need is an odd posture for Appellees who want to get paid. A.155; A.183.

---

3 Documentary discovery, proposed a remote deposition, and offered sworn notarized testimony subject to Dubai-court authorization. A.207 , A.195 .

The District Court did not analyze that comparative record. Instead, it accepted the premise that Gentile could avoid the "legal risk" of arrest only by traveling to New York and submitting to the deposition in person. A.207 n.6. That reasoning makes the warrant self-justifying: the warrant creates the risk, and the risk is then invoked to establish the necessity of the warrant. A purge condition that effectively requires the contemnor to submit to arrest before he can demonstrate compliance is not a meaningful opportunity to purge. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911); *Hicks v. Feiock*, 485 U.S. 624 (1988).

A court may of course require in-person testimony, but it must distinguish between a sanction necessary to secure compliance and one used principally to gain negotiating leverage. The District Court made no finding that remote examination, sworn testimony, judicial assistance from Dubai, trustee-coordinated discovery, or a more

specific noncustodial compliance order would be ineffective. Nor did it explain why the severe consequences of arrest and indefinite detention were proportionate to the incremental value of insisting on physical presence in New York.

On this record, the warrant's apparent function as leverage, combined with the failure to evaluate available alternatives, requires vacatur or, at minimum, remand for a fresh and reasoned proportionality determination. See *In re Outlaw*

*Laboratories, LP*, 339 F.R.D. 428 (S.D. Cal. 2021) where the district curt recognized that forcing an out-of-state or foreign dependent to travel in person when remote video platforms-aka Zoom- are available is an undue burden under Rule 16(c); see *Rouviere v. Deputy Orthopaedics, Inc.*, 471 F.Supp3d 571 (SDNY 2020), where Zoom offers a full and sufficient opportunity to evaluate a dependent's non verbal responses, demeanor and overall credibility. [Appellees deposed Gentile via Zoom prior to entry of judgment below on October 26, 2022, A.11, and the District Court thereafter ordered him to submit to an in-person deposition within the Southern District of New York by October 21, 2025, A.8; A.86, a deadline later extended to November 10, 2025, A.89; A.204].

District Court orders must be aimed strictly at getting discovery rather than being used to penalize foreign parties who face legitimate hurdles to travel into the US. *Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994). Foreign deponents should generally be permitted to testify via remote means or in their home county unless extraordinary circumstances require physical presence. Here, Gentile was and is willing to submit to a Zoom deposition in the court below and in NYS Supreme Court; a summary denial of that coupled with an arrest warrant, violates the principles of proportionality and equity in federal discovery. See *Armstrong v Guccione*, 470 F3d 9 (2nd Cir. 2006). When a judgment creditor uses an outstanding arrest warrant to force a party into the jurisdiction rather than

accepting an available virtual deposition, both this Court and the SDNY jurisprudence treat it as an abuse of the judicial process. *SEC v Musella*, 818 FSupp 1041 (SDNY 1993).

Notably, Appellees' attorneys demanded an arrest warrant while declining to depose Gentile by Zoom, which shows that the undue burden they insisted upon and obtained under Rule 26(c) was merely for tactical harassment rather than legitimate discovery. *Shi Min Chen v. Hunan Manor Enterprise Corp.*, 2020 WL 4932777 ( SDNY Aug. 24, 2020); *Buzzeo v. Harris*, 2021 WL 3810762 (SDNY Aug. 26, 2021).

## XIII. THE DISTRICT COURT ABUSED ITS DISCRETION BY REINSTATING THE ARREST WARRANT WITHOUT CONSIDERING THE DEFECTIVE NOTICE PREDICATE OF THE ORIGINAL WARRANT

The April 10, 2026 orders should be vacated because the District Court reinstated the prior arrest remedy without adequately considering that the original warrant was issued after Appellees failed to complete the Court-ordered service of the contempt application. Gentile does not seek to evade the time limits applicable to a direct appeal from the September 20, 2024 warrant A.43. Rather, the defect[4] in the first warrant is relevant because the April 2026 orders imposed a new,

4 The September 23, 2025 Order lifted the previous warrant "without prejudice to renewal." A.86. "Without prejudice to renewal" preserves an application as if the first warrant was properly issued.

discretionary civil-contempt remedy based in part on that warrant's history and effectiveness.

The Court's August 29, 2024 service order required publication of the arrest notice in The Gulf News on three occasions A.32. It then directed that copies also be sent by mail, email, and social-media messaging "to increase the probability" that Gentile would receive notice. (A.34–A.36 (Dkt. 333, at 3–5).) The order therefore established a cumulative notice plan, not permission to disregard publication and proceed upon counsel's unilateral selection of other methods.

Lopez nevertheless affirmed that he had "made arrangements" for publication on September 9, 10, and 11, 2024. (A.37 (Dkt. 335 ¶ 4).) The September 20. 2024 warrant order relied on those service affirmations and concluded that Gentile had been served by "publication, mail, email, and social media messaging." (A.44–A.45 (Dkt. 341, at 2–3).) Nearly a year later, however, Lopez admitted that publication "did not take place," because he had neither obtained the required permission from an Emirati court nor confirmed that *The Gulf News* had published the notice. (A.63–A.64 (Dkt. 391, at 1–2).) Thus, the method specifically designed to notify Gentile in Dubai of an application seeking his civil arrest never

occurred. [The District Court characterized the failures of counsels, ie failure to publish, were harmless errors A.86]

That failure was material. Due process requires notice reasonably calculated to inform an interested party of proceedings affecting his liberty and to provide a meaningful opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Second Circuit likewise requires contempt proceedings to be supported by adequate notice and an opportunity to respond. *In re Larisa Ivanovna Markus,* 78 F.4th 554, 566–67 (2d Cir. 2023). The record did not establish that the remaining methods cured the defect: Tauber's submissions did not reliably establish that the messages reached accounts owned, maintained, and accessible to Gentile, or that he actually received the arrest application before the September 13 deadline. (A.41–A.42 (Dkt. 336).)

The District Court later lifted the first warrant "without prejudice to renewal," not because it found that the original service process had been valid, but because it afforded Gentile an opportunity to cooperate with discovery and appear for a deposition. (A.86 (Dkt. 427, at 5).) When plaintiffs moved to reinstate the warrant, the court was therefore required to exercise fresh discretion. Civil contempt is not self-executing, and a coercive sanction must remain remedial rather than punitive. *Bagwell v. International Union, United Mine Workers of America*, 512 U.S. 821, 827–29 (1994). The court also had to determine whether the renewed arrest order was necessary and reasonably calculated to secure present

compliance. *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).

Instead, the April 10, 2026 order treated Gentile's challenge to the first warrant as irrelevant and concluded that Appellees were simply "permitted to renew" the warrant after Gentile failed to appear. (A.86.) That reasoning overlooked the material distinction between a prior warrant issued on an incomplete service record and a renewed warrant authorizing arrest, forced entry, and incarceration. The court did not determine whether the original contempt finding rested on notice that was never properly provided, whether Gentile received timely notice of the arrest application, or whether the prior warrant could fairly serve as the foundation for renewed incarceration.

Nor did the court adequately address the constitutional distinction between coercive and punitive contempt. A civil sanction is permissible only if it compensates the injured party or coerces compliance and, when noncompensatory, provides a meaningful opportunity to purge. *Bagwell*, 512 U.S. at 827–29. The second warrant orders incarceration until Gentile complies with outstanding subpoenas and appears for an in-person deposition. (A.264 (Dkt. 526, at 2).) Given the unresolved notice defect, the court was required to make a reasoned finding that Gentile presently could comply and that arrest, rather than a less drastic

alternative, would genuinely coerce compliance. *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101–02 (2d Cir. 2016). It did not do so.

The error was not harmless. The first warrant was issued after Gentile failed to oppose the arrest application, but the record now establishes that Appellees did not complete the Court's required publication and that the supporting service affirmation materially overstated what had occurred. The absence of timely notice directly affected Gentile's opportunity to contest the initial arrest request and consequently affected the weight the court could properly give that warrant when deciding whether to impose the second one.

Accordingly, Gentile requests that this Court vacate the April 10, 2026 contempt and reinstatement orders and remand for a new determination that addresses: (1) the cumulative requirements of the August 29, 2024 service order; (2) the effect of Lopez's admission that publication never occurred; (3) whether Tauber established delivery to Gentile's actual and accessible social-media accounts; (4) whether Gentile received constitutionally adequate notice of the first arrest application; and (5) whether renewed arrest is presently coercive, necessary, and proportionate.

## XIV. THE ARREST WARRANT WAS IMPERMISSIBLY USED AS LEVERAGE TO PRESSURE GENTILE'S FAMILY

To assess the conduct of the Appellees, the NYS Supreme Court litigation commenced by them in March 2026 against an LLC initially owned by Gentile's

father and mother, supports a substantial inference that the arrest warrant[5] was not being used solely to obtain a deposition, but as leverage to force payment of Gentile's judgments through pressure directed at Gentile and his family. Appellees simultaneously characterized Gentile as a judgment debtor who had not paid, pursued an arrest warrant to compel his return to New York, subpoenaed his mother, sister, and cousin, and commenced the Westchester action seeking to seize property held by XGen, LLC ("XGen")—an entity Gentile consistently denied owning. Westchester Dkt. 42 at 2, Dkt. 54 ¶¶ 6, 9–10 and Dkt. 41 ¶¶ 21–27.

That parallel conduct matters because civil contempt must remain coercive and remedial, not punitive. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827–28 (1994). The sanction must be reasonably calculated to induce the ordered act, not to punish a debtor for nonpayment or to create indefinite detention until creditors obtain payment or accept disputed testimony. *Shillitani v. United States*, 384 U.S. 364, 368 (1966). As Appellees' own Westchester filing confirms, they seek to use the SDNY enforcement proceedings

to develop an alter-ego theory against XGen and to reach property owned by that entity. Avalon NYSCEF Dkt. No. 42 at 2. Their discovery responses further

---

5 Giovanni Gentile, the Appellant's father died on January 2, 2025, https://www.yannantuonofh.com/obituary/Giovanni-Gentile-1. Sadly Gentile could not come to the US to say goodbye to his father, due to the first arrest warrant of which he never received notice. Justice for such punitive conduct is not sought here.

state that they intended to ask the SDNY court to determine whether XGen was Gentile's alter ego and whether the property should be turned over. Westchester Dkt. 54 at 2–3, because they now apparently have a sour taste in their mouths concerning litigating before Judge Torrent in NYS Supreme Court and also most likely because Gentile served an answer with a counterclaim seeking a declaratory judgment that he does not own XGen. Avalon, Index No. 58930/2026 (Sup. Ct. Westchester County).

The critical question is therefore not merely whether Gentile missed an in-person deposition, but whether arrest remained a genuinely coercive and proportionate means of obtaining testimony—or had become a punitive collection device designed to pressure Gentile and nondebtor relatives into funding the judgment.

The error is especially serious because New York law likewise distinguishes improper use of process from merely filing or pursuing a lawsuit. Abuse of process requires a regularly issued process, intent to cause harm without justification, and use of that process to obtain a collateral objective outside the process's legitimate end. *Curiano v. Suozzi*, 63 NY2d 113, 116–17 (1984). A malicious motive alone is insufficient, but process is actionable when it is perverted after issuance to achieve an ulterior objective. *Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 NY2d 397, 403–06 (1975). The same principle informs the federal

constitutional analysis here: this Court cannot assume that a warrant remained civil and coercive without examining whether Appellees were using it to accomplish the collateral objective of extracting payment.

## XV. THE R&R, THE BASIS FOR THE WARRANT, IMPROPERLY TREATED LITIGATION DELAY AND NONPAYMENT AS GROUNDS FOR ARREST

The Report and Recommendation improperly attributed delay in resolving this case to Gentile while disregarding the extraordinary delay caused by the COVID-19 pandemic and the Court's approximately two-year pendency of the summary-judgment motions before Judge Broderick. A.200–A.201 That error matters because the R&R used the resulting delay—and Gentile's failure to pay the judgments—as evidence that Gentile acted in bad faith and should be arrested. The record does not support that inference.

The R&R repeatedly characterized Gentile as having "evaded discovery," "strategized to evade compliance," and "done everything he can to evade paying the judgments." R&R at A.201, A.204, A.207. But those assertions conflate distinct matters: (1) the time required to adjudicate the merits; (2) post-judgment collection; (3) discovery disputes; and (4) Gentile's inability or unwillingness to pay. A judgment debtor's nonpayment cannot, without more, establish contempt for failing to appear at a deposition. Post-judgment enforcement procedures must be conducted in accordance with applicable state procedure under FRCP 69(a)(1),

and discovery in aid of enforcement is authorized under FRCP 69(a)(2). Those provisions do not convert inability to pay into a basis for incarceration or permit the Court to treat nonpayment as proof that every subsequent discovery dispute was willful.

The R&R also ignored that substantial portions of the case's duration preceded entry of judgment and were not caused by Gentile. The summary-judgment motions remained pending for approximately two years during the COVID-19 period before Judge Broderick. A.201 To the extent that procedural delay was relevant to the contempt inquiry, the Court was required to distinguish delay attributable to Gentile from delay attributable to the pandemic, judicial deliberation, and ordinary litigation. Instead, the R&R treated the entire history as evidence that Gentile had deliberately obstructed enforcement. That unexplained attribution was particularly consequential because civil contempt requires proof of noncompliance and the absence of a reasonably diligent effort to comply—not generalized dissatisfaction with the length of the litigation. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Drywall Tapers & Pointers of Greater N.Y. v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989).

The R&R's reasoning was further compromised by its repeated emphasis that Gentile "has not paid the Judgment" and has supposedly taken measures to avoid doing so. A.201, A.204. That is not a proper substitute for the findings

required before imposing a coercive liberty sanction. The contempt order ultimately directed that Gentile be arrested and incarcerated until he complied with discovery and appeared for an in-person deposition in New York. A.263–A.264. Yet the R&R's analysis repeatedly returned to the judgments themselves, as though the proper response to nonpayment were imprisonment until Gentile submitted to the creditors' demands.

That approach is inconsistent with the distinction between coercive civil contempt and punitive incarceration. Civil contempt must remain remedial and coercive rather than punitive. I*nternational Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827–28 (1994). And where incarceration is used to compel an act, the sanction must provide a realistic opportunity for the contemnor to obtain release through compliance; it cannot function as punishment for an underlying debt or as an indefinite collection device. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947); *Turner v. Rogers*, 564 U.S. 431, 442–43 (2011).

The concern is not merely theoretical. In a separate order, Magistrate Judge Lehrburger stated that, if Gentile wished to make "affirmative use of the Court's power to impose sanctions or seek other affirmative relief," he "should be prepared to appear in New York." A.182 (Dkt. 490, at 2). That condition improperly makes access to judicial relief depend on physical presence in New York, even though

Gentile was residing abroad and was actively participating in litigation. The condition is especially troubling because the court's power to hear and decide a motion is not ordinarily conditioned on a pro se litigant's willingness or ability to travel internationally. Gentile had continued filing motions, responding to discovery demands, participating in related proceedings, and offering to appear remotely. The record also shows that he physically appeared and testified over several days in the separate Florida securities action in June 2024. A.65; A.68; A.69. [Where the Appellees could have, but did not, serve Gentile with notice of the first contempt warrant and claiming he was also a fugitive] That evidence is inconsistent with the R&R's broad portrayal of Gentile as someone who had simply disappeared from the judicial process.

The statement that Gentile should appear in New York to obtain relief also creates an untenable asymmetry. ECF No. Appellees were permitted to seek enforcement from NY against a Dubai resident, while Gentile was effectively told that he could not obtain meaningful judicial relief from Dubai; he could only ask for such by entering the jurisdiction where an arrest warrant threatened his liberty. Such a condition does not facilitate compliance; it places Gentile in a coercive loop in which he must risk arrest to challenge the basis, scope, or feasibility of the arrest itself. The resulting procedure is particularly problematic for a *pro se* litigant residing outside the United States.

Finally, the R&R's repeated references to the judgments and the assertion that Gentile should simply have paid them reveal an improper purpose. The question presented was whether Gentile willfully violated a clear discovery or deposition obligation and whether arrest was a necessary and proportionate means of securing compliance. It was not whether Gentile had satisfied the judgments. The judgments totaled more than $16 million , making the suggestion that Gentile[6] "should have just paid" both conclusory and legally irrelevant to whether he could presently comply with the deposition condition. A.182; A.200–A.201. A

contempt order cannot be sustained by substituting the court's desire for payment for a fact-specific finding that Gentile had the present ability to comply with the particular condition imposed.

This Court should reject the R&R's attribution of the case's historical delay to Gentile, disregard nonpayment as an independent basis for the arrest sanction, and hold that access to judicial relief could not properly be conditioned on

6 The size of this judgment should compel this Court to overturn Donohue v. Bulldog because the only use it has is to feed the pockets of attorneys representing companies who have suffered zero harm in reality, despite the Learned Hand imposition of "fiduciary' responsibility that is nowhere in the statute itself and that has zero risk today with high speed trading to obtain any insider information as was the purpose after the catastrophic fall of the Stock Market in 1929. There is utterly no market deterrence nor effect provided by 16(b) litigation, unless the existence of a cash cow somehow benefits the market when it should be shunned. Nor is 16(b) on the radar of Congress that has conducted itself as a self serving body more than legislating for the good. Throwing the veils of how the government should operate does not eradicate the truth.

Gentile's physical appearance in New York. At minimum, the matter should be remanded for findings addressing: **(1)**which delays were actually attributable to Gentile; **(2)** whether Gentile had a present and realistic ability to appear in New York on the short notice provided; **(3)** whether remote examination or other measures were available; and **(4)** whether incarceration was genuinely coercive or instead operated as punishment and collection leverage.

## XVI. THE WARRANT IMPROPERLY EXPANDED AVALON'S MOTION INTO A CASE-WIDE CONTEMPT REMEDY

New Concept was a judgment creditor, but it did not independently establish a subpoena violation or other predicate for the extraordinary arrest remedy. The record shows that Avalon initiated the relevant contempt proceedings A.249 while the April 2026 order broadened the purge condition to encompass unidentified "outstanding subpoenas" in both nominally consolidated cases.

Avalon filed the July 2024 motion to compel, the August 2024 renewed motion, and the application for a civil-arrest warrant. A.21. The court found Gentile in contempt specifically for failing "to respond to Avalon's post-judgment subpoenas," directed incarceration until he responded to those subpoenas, and instructed Avalon's counsel to coordinate execution with the Marshals. FRCP 45(g) authorizes contempt for failure to obey a subpoena; it does not authorize a generalized contempt sanction untethered to a specified subpoena and violation. See *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

The 2025 reinstatement proceeding did not cure that defect. Although the notice of motion was styled for "Plaintiffs/Judgment Creditors," the District Court repeatedly identified the motion as "Avalon's December 2 motion," held that "Avalon was permitted to renew," and granted "Avalon's December 2, 2025 motion." Avalon Dkt. 525, at 2, 5–6, 12, 14, A.250, A.253–A.254, A.260, A.262; Dkt. 476, A.155; Dkt. 477, A.157. Neither the motion nor the resulting opinion identified a New Concept subpoena, a New Concept discovery demand, or noncompliance with an obligation owed to New Concept.

Yet the resulting order materially enlarged the original Avalon-specific contempt remedy. It directs imprisonment until Gentile complies with "any outstanding subpoenas in this case" and appears under both docket numbers. A.264 (Dkt. 526, at 2). That language leaves Gentile, the Marshals, and the Court without a definite answer to the essential questions: which subpoenas must be satisfied, which creditor issued them, what documents or testimony remain required, and what precise acts will purge the contempt.

Civil contempt requires a "clear and unambiguous" order, clear and convincing proof of noncompliance, and failure to make diligent efforts to comply. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

New Concept's separate judgment does not itself answer those questions. Post-judgment discovery belongs to the judgment creditor pursuing it. FRCP 69(a)(2). And consolidation did not merge Avalon's and New Concept's actions, erase the distinction between their respective judgments and subpoenas, or permit a coercive remedy based on an unspecified co-plaintiff obligation. See *Hall v. Hall*, 584 U.S. 59, 77–78 (2018).

This is therefore not principally an Article III standing objection. New Concept's unsatisfied judgment supplies an enforcement interest. But its status as a creditor did not permit the court to extend an arrest warrant, initiated and factually predicated by Avalon, to unidentified New Concept discovery obligations without a defined predicate violation and a clear purge condition. The Court should vacate the warrant or, at minimum, remand with instructions that any coercive order identify the specific subpoena(s), the proven noncompliance, and the precise means by which Gentile may purge contempt.

## XVII. THIS COURT SHOULD PERMIT A LIMITED RECORD NOTICE REGARDING RELATED PROCEEDINGS WITHOUT CONSIDERING THE WESTCHESTER FILES AS EVIDENCE

Gentile does not ask this Court to decide the merits of the related Westchester proceeding, determine ownership of 300 Columbus Avenue, Tuckahoe, NY or resolve whether XGen is his alter ego. Nor does he ask to supplement the appendix with materials that were not before the District Court. He

recognizes that the appellate record is generally limited to the papers and proceedings before the District Court. FRAP 10(a); FRAP 30(a).

Gentile requests only that the Court permit a limited reference to the existence and procedural posture of a related, publicly filed proceeding. A post-judgment turnover action is pending in Westchester County Supreme Court, Index No. 58930/2026, involving Appellees, XGen, 300 Columbus Avenue, and Gentile.

Appellees allege that XGen and the property may be reached to satisfy the federal judgments. Appellees have also represented in that proceeding that the SDNY enforcement proceedings involve overlapping issues concerning Gentile's alleged ownership and control and have sought a stay to permit those federal proceedings to continue. Avalon NYSCEF Dkt. No. 50, at 2. The federal record independently confirms that Appellees are pursuing broader collection discovery concerning Gentile's assets and alleged control of other entities. 15 USC § 78p(b); A.251–A.254 (Dkt. 525, at 3–6); A.183–A.184 (Dkt. 493, at 1–2); A.234–A.235 (Dkt. 517, at 3–4).

The Court may take judicial notice of the existence, filing, and procedural posture of a publicly filed proceeding without accepting the truth of disputed factual allegations contained in those filings. FRE 201; *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 424 (2d Cir. 2008). Accordingly, Gentile asks the Court to notice only that: (1) the Westchester action exists and

remains pending; (2) it concerns related post-judgment discovery and alleged ownership or control of property and entities; (3) Gentile has appeared and participated in that action; and (4) a dispute arose there concerning whether his deposition would proceed remotely or require travel from Dubai to White Plains.

These matters are relevant not to establish the merits of the Westchester claims, but to the necessity and proportionality of the arrest warrant. In the Westchester proceeding, XGen—not Appellees—noticed Gentile's deposition for June 30, 2026. Avalon NYSCEF Dkt. Nos. 50, at 1–2, and 51. XGen's counsel represented that Appellees objected to remote testimony and wanted Gentile to travel from Dubai to White Plains, and that the deposition would not proceed while the dispute remained unresolved. See Fleming Aff. ¶¶ 3–4, *Avalon* NYSCEF Dkt. 56; Fleming Letter at 1–2, *Avalon* NYSCEF Dkt. 50. Appellees' related filings characterized the Westchester action as overlapping with the SDNY enforcement proceedings and sought to defer the state-court matter while pursuing federal discovery concerning ownership and control. See Tauber Br. at 2, 5–6, 9, *Avalon* NYSCEF Dkt. 42.

The Westchester deposition would not automatically satisfy the SDNY orders, but the parties' positions there bear directly on whether physical presence in New York is genuinely necessary to obtain sworn testimony.

That subsequent procedural context provides a concrete reason to question the District Court's assumption that only physical appearance in the SDNY could secure the information Appellees sought. If the relevant subjects include assets, ownership, control, and judgment enforcement, then remote testimony, sworn written responses, or a deposition supervised by either court may offer less coercive means of obtaining information. Appellees' resistance to remote testimony in the related proceeding does not conclusively establish an improper motive. It does, however, bear on whether the warrant's practical operation is to obtain testimony or to punitively compel Gentile's physical return to New York.

Gentile's participation in the Westchester action likewise bears on the necessity of arrest. He filed a verified answer and amended answer, submitted a sworn affidavit, and has not abandoned judicial proceedings. See Gentile Answer, Avalon NYSCEF Dkt. 40; Gentile Aff. ¶¶ 1–11, Avalon NYSCEF Dkt. 54. Those filings are not offered to prove the truth of Gentile's ownership assertions. They are relevant only to show that the dispute concerns the manner and location of testimony—not a categorical refusal to participate in litigation.

Civil contempt sanctions must remain coercive and remedial rather than punitive. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827–28 (1994). The sanction must also be tailored and reasonably related to securing compliance. *Paramedics Electromedicina Comercial, Ltda. v. GE*

*Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). The Westchester materials do not resolve whether remote testimony would be adequate, but they reinforce the need for findings addressing: (1) what information Appellees still require ;[7] (2) why that information cannot be obtained remotely or in writing; (3) why Gentile's physical presence in New York is necessary; (4) whether arrest and detention are reasonably calculated to secure the requested discovery; and (5) whether the warrant's practical effect exceeds legitimate coercion and compels physical surrender.

The Court should therefore permit a limited reference to the Westchester proceeding as subsequent procedural context and to the parties' litigation positions, without treating the Westchester filings as appellate-record evidence or resolving the merits of the state action. The Court should vacate the warrant or remand for a reasoned determination of whether arrest is genuinely necessary to obtain testimony and whether less coercive alternatives are inadequate.

---

7 Oddly, Mr. Lopez, counsel for Appellees, stated below DKT 528 A.232 to the district court in April 2026 that he had reliable evidence that Gentile enjoyed a steady income stream from 300 Columbus Ave. This would be remarkable evidence had it been true; the SDNY depositions of Gentile's mother, sister, cousin, attorney for XGen nor any other supposed witness had not borne out this self serving statement of Mr. Lopez.

## XVIII. ANY FUGITIVE-DISENTITLEMENT OBJECTION SHOULD BE REJECTED.

Appellees' counsel has stated that Appellees will ask this Court to dismiss this appeal under the fugitive-disentitlement doctrine. Avalon NYSCEF Dkt. 49. Gentile addresses the point now so that the Court has the record before it. If Appellees move to dismiss or limit the appeal under the fugitive-disentitlement doctrine, that motion should be denied. The doctrine is equitable and discretionary, not automatic, and it is bounded. See Degen v. United States, 517 U.S. 820 (1996); Ortega-Rodriguez v. United States, 507 U.S. 234 (1993). It requires a meaningful nexus between the alleged fugitive status and the appellate process. In Degen v. United States the Supreme Court unanimously refused to strike a claimant's defenses where he remained abroad and out of the reach of a criminal warrant, explaining that the sanction was "too blunt an instrument," that courts must consider whether lesser measures protect the judicial process, and that "[t]he dignity of a court derives from the respect accorded its judgments," not from disabling a litigant. 517 US 820, 828–29 (1996). Ortega-Rodriguez v. United States requires a "connection between [the] fugitive status and [the] appellate process" before an appeal may be dismissed on that ground. 507 US 234, 249 (1993). This Court has applied disentitlement to civil appellants, but only where the appellant's own conduct frustrated the appellate court's process. Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 280–82 (2d Cir. 1997). No

nexus exists here. Gentile has appeared and litigated continuously: he opposed the reinstatement motion, A.166; he wrote to the District Court disclaiming any foreign-law excuse, A.166; he noticed these appeals promptly, A.269; A.270; he has complied with this Court's scheduling order; and he appears in the parallel state proceeding, where he was noticed for a Zoom deposition by a co-defendant and was prepared to appear, and where he offered Appellees an examination by video conference. Avalon NYSCEF Dkt. 49. He has not concealed his location—it is in the record—and he has not defied any order of this Court. The only warrant said to make him a fugitive is the very order under review; treating it as a bar to review would make the order self-insulating. Degen, 517 US at 828 (declining to apply the doctrine where "the justice of the underlying claim" would go unexamined and "the sanction … would be too rough"). Whatever Appellees may argue about compliance below, the remedy for that is the District Court's contempt power, which they have already invoked—not the extinction of appellate review.

## CONCLUSION

For the foregoing reasons, the Court should:

1. reverse or vacate the *nunc pro tunc* Rule 54(b) certification entered April 10, 2026 insofar as it makes the Rule 54(b) certification effective March 20, 2024;
2. a determination that, absent retroactive certification, the March 2024 judgment did not have immediate Rule 54(b) finality when entered;

3. remand for a reasoned determination whether prospective certification is appropriate or Mintbroker's status must first be resolved;

4. reconsideration of enforcement orders to the extent they depend on retroactive certification;

5. vacate the April 10, 2026 civil contempt and arrest order in its entirety, including the nationwide-enforcement, force, entry, and indefinite-detention provisions;

6. deny any request to dismiss or limit this appeal under the fugitive-disentitlement doctrine;

7. remand for proceedings consistent with *Turner v. Rogers* and *Perfect Fit*, including any evidentiary hearing the District Court deems necessary, an express finding on present ability to comply, and consideration of remedies short of incarceration, including remote examination;

8. any fugitive-disentitlement objection should be denied.

Dated: September, 8th, 2026

Respectfully submitted,

GUY GENTILE
*Pro Se* Defendant-Appellant
P.O. Box 504377
Dubai, United Arab Emirates
+971 58 590 2347
mrguygentile@gmail.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4)(A) because it contains 13,998 words, excluding the parts exempted by FRAP 32(f). This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced serif typeface, Times New Roman, in 14-point type.

Dated: September, 8th, 2026

GUY GENTILE
*Pro Se* Defendant-Appellant
P.O. Box 504377
Dubai, United Arab Emirates
+971 58 590 2347
mrguygentile@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September, 7th, 2026, I filed the foregoing brief and the accompanying appendix with the Clerk of the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system and served copies on counsel for Plaintiffs-Appellees by electronic mail and through CM/ECF. Paper copies of the brief and of the appendix will be filed with the Clerk in the number and within the time required by Second Circuit Local Rules 30.1 and 31.1, or as otherwise directed by the Clerk.

Dated: September, 8th, 2026

GUY GENTILE
*Pro Se* Defendant-Appellant
P.O. Box 504377
Dubai, United Arab Emirates
+971 58 590 2347
mrguygentile@gmail.com

**ADDENDUM**

**Pertinent Statutes and Rules (Fed. R. App. P. 28(f))**

**28 USC § 1291. Final decisions of District Courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the District Courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**18 USC § 401. Power of court**

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

**Fed. R. App. P. 4(a)(1)(A)**

In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

**FRCP 4.1(b). Enforcing Orders: Committing for Civil Contempt**

An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district. Any other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued.

**FRCP 30(b)(4). Deposition by Remote Means**

The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions.

**FRCP 54(b). Judgment on Multiple Claims or Involving Multiple Parties**

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is

no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

**FRCP 69(a). Execution; Obtaining Discovery**

(1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. (2) Obtaining Discovery. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.